IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEAN CARLOS ALEXI FIALLOS )
MANZANARES, )
 )
      Petitioner, )
 )
v. )      Case 2:25-cv-00798-KWR-KRS
 )
JOSE ORTEZ, *Field Office Director Immigration* )
*and Customs Enforcement (ICE) Department of* )
*Homeland Security*, )
 )
      Respondent. )

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on *pro se*[1] Petitioner Jean Carlos Alexi Fiallos Manzanares ("Petitioner") Petition under 28 U.S.C. § 2241 for a Writ of Habeas Corpus ("Petition"), (Doc. 1), which he filed through his sister Marily Fiallos ("Ms. Fiallos"), on August 8, 2025. On January 23, 2026, Respondent filed a response. (Doc. 11). Petitioner did not file a reply by the February 13, 2026, deadline. (Doc. 5 at 2) (optional reply due twenty-one (21) days after response filed).[2] United States District Judge Kea W. Riggs referred this case to me pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 6); *see also Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990). Having considered the parties' submissions, the relevant law, and the record

---

[1] Petitioner is a *pro se* litigant and, as such, his "pleadings are to be construed liberally and held to a less stringent stand than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). It is not the proper function of this Court, however, to assume the role of *pro se* Petitioner's advocate. *Id.*

[2] Rule 5 of the Rules Governing § 2254 Cases provides that Petitioner may submit a reply to Respondent's response or answer within a time that the judge fixes.

in this case, I conclude that Petition is not entitled to relief. I therefore recommend that the Court **DENY** Petitioner's Petition, (Doc. 1), **without prejudice**.

## I.    FACTUAL BACKGROUND

Petitioner, a 31-year-old citizen and national of Honduras, is a recipient of Deferred Action for Childhood Arrivals ("DACA"), a status he has held since applying for the program in or around November 29, 2022. (Doc. 11-2 at 1-2). The exact date of Petitioner's arrival to the United States is unknown, but it was approximately 24 years ago, when he was seven (7) years old. *See* (Doc. 1 at 4); *see also* (Doc. 11-2 at 2). Petitioner has lived continuously in the United States since his arrival. (Doc. 1 at 4). While living in this country, Petitioner has become a father to two children with his wife, a naturally born U.S. citizen. (*Id.*); *see also* (Doc. 1 at 14-17). On April 17, 2025, the U.S. Citizenship and Immigration Services ("USCIS") received Petitioner's Form I-812D, Consideration of DACA. (Doc. 1 at 11); *see also* (Doc. 11-6 at 1). The record does not state whether Petitioner's DACA status lapsed during the review period.

On May 30, 2025, a Homeland Security Investigations ("HSI") special agent observed Petitioner exiting a residence in Miami, Florida, and entering into a white Ford van. (Doc. 11-2 at 2). HSI, the Drug Enforcement Administration ("DEA"), and the Federal Bureau of Investigations ("FBI") conducted a vehicle stop of the white Ford van wherein Petitioner presented an expired Florida driver's license. (*Id.*) Petitioner was subsequently arrested and transported to a Miami processing center where the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA"), commencing immigration proceedings against Petitioner based on an allegation that he is an "arriving alien" subject to removal " pursuant to the Immigration and National Act ("INA") § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182(a)(6)(A)(i). (*Id.*); *see also* (Doc. 11-1 at 1); (Doc. 11-2 at 1). Petitioner was then transferred to Otero County Processing Center ("OCPC") in

Chaparral, New Mexico, where he is currently detained.[3] (Doc. 1).

On or about June 13, 2025, an Immigration Judge ("IJ") conducted an in custody redetermination proceeding pursuant to 8 C.F.R. § 1236 and denied Petitioner's request on the basis that he did "not me[e]t his burden of showing that he is not a danger to the community." (Doc. 11-3 at 1).[4] Petitioner's appeal was due July 14, 2025. (*Id.* at 2). The record is void of any evidence that Petitioner appealed the IJ's bond decision.

On July 19, 2025, USCIS issued an Approval Notice of Petitioner's Consideration of DACA, valid from July 19, 2025, to July 18, 2027. (Doc. 11-6 at 1). The Approval Notice specifically provided:

> USCIS, the in the exercise of its prosecutorial discretion, has decided to defer action in your case. Deferred action is an exercise of prosecutorial discretion by USCIS not to pursue the removal of an individual from the United States for a specific period. Deferred action does not confer or alter any immigration status.
>
> Unless terminated, this decision to defer removal action will remain in effect for the duration of the validity of the period noted above.

(*Id.*)

On September 22, 2025, an IJ issued an oral and written decision finding Petitioner "inadmissible under the following Section(s) of the [INA]: (212)(1)(6)(A)(i). (Doc. 11-4 at 2-3). The IJ further denied the cancellation of Petitioner's removal for nonpermanent residents under

---

[3] https://locator.ice.gov/odls/#/search *last visited* May 28, 2026.

[4] The Court, *sua sponte*, takes judicial notice of *Matter of Jonathan Javier Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA), 2025 WL 2674169 (Sept. 5, 2025), for the finding that Petitioner received a custody redetermination hearing under 8 U.S.C. § 1226 approximately three (3) months *prior* to the holding in *Matter of Hurtado*. *See Matter of Jonathan Javier Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA), 2025 WL 2674169 (Sept. 5, 2025) (IJ holding that he lacked jurisdiction to hear a bond request because the respondent was subject to mandatory detention). As this District has explained in similar cases, a policy directive issued under the current executive administration led to a decision from the BIA on September 5, 2025, in *Hurtado*, which held that immigration judges lack authority to hear bond requests of noncitizens present in the United States without inspection and admission because those individuals were classified under 8 U.S.C. § 1225(b)(2) and thus subject to mandatory detention. Like almost all courts to have considered the issue, this District has rejected *Hurtado*. Nevertheless, the undersigned finds *Hurtado* is inapplicable to the instant matter because Petitioner received a bond hearing prior to the BIA's holding in *Hurtado*.

INA § 240A(b)(1). (*Id.* at 4). Petitioner was therefore ordered removed to Honduras. (*Id.* at 5).

On October 17, 2025, USCIS notified Petitioner that it "will not defer" removal in his case because "USCIS lacked the authority to approve [his] request because [he was] in immigration detention as of the date of [USCIS'] adjudication" pursuant to 8 C.F.R. § 236.23(a)(2). (Doc. 11-7 at 1). Consequently, Petitioner's deferred action under DACA was denied and he was not permitted to file an appeal or move to reopen USCIS' decision under 8 C.F.R. § 236.23(c)(3). (*Id.*)

On October 22, 2025, Petitioner appealed the order of removal before the Board of Immigration Appeals ("BIA"), which is currently pending.[5] (*Id.* at 6); (Doc. 11-5 at 1-2). Accordingly, the IJ's September 22, 2025, order of removal is not administratively final.[6]

## II. PROCEDURAL BACKGROUND

On August 18, 2025, Ms. Fiallos filed the Petition on behalf of her brother, Petitioner. Petitioner is currently detained at OCPC in Chaparral, New Mexico. (Doc. 1). Petitioner challenges his detention on the ground that he has lawful status as an Approved DACA recipient. (*Id.* at 3-4) (Count I). Petitioner seeks his immediate release based on his DACA status alone. (*Id.* at 10). The Petition does not raise any other grounds for relief.

Respondent's asserts four arguments in response. First, Ms. Fiallos should not be permitted to proceed as "Next Friend" because she has not presented any evidence that Petitioner cannot appear on his own behalf. (Doc. 11 at 7). Further, she has not shown that Petitioner lacks "a complete inability to access the courts" as is required under *Whitmore v. Ark.*, 495 U.S. 149, 164 (1990).(*Id.* at 8). Second, Petitioner has not exhausted his administrative remedies because his appeal is still pending before the BIA and, hence, there is no final removal order. (*Id.* at 8-9). Third,

---

[5] https://acis.eoir.justice.gov/en/caseInformation *last visited* May 28, 2026 (reflecting an appeal to the removal order was filed on October 22, 2025, and no final order has been filed).
[6] A removal order becomes "administratively final" when the order has been affirmed by the BIA or the time for seeking review has expired. 8 U.S.C. § 1101(a)(47)(B); *Riley v. Bondi*, 606 U.S. 259, 267 (2025).

Petitioner was detained under Section 1226 and received a custody redetermination hearing prior to the *Hurtado* decision. (*Id.* at 9). Petitioner was not, and is not, being held under Section 1225. (*Id.*) Further, on June 13, 2025, the IJ denied Petitioner's request for bond finding that he failed to meet his burden of showing he is not a danger to the community. (*Id.*) And fourth, the Court is jurisdictionally barred to review the IJ's "discretionary judgment[s] regarding the application of [Section 1226]." (*Id.* at 10). In support, Respondent cites Section 1226(e), which provides, "[n]o court may set aside any action or decision by [ICE] under this section regarding the detention of any alien or the revocation or denial of bond or parole." (*Id.*) (citing 8 U.S.C. § 1226(e)).

On May 13, 2026, Ms. Fiallos filed a Motion for Preliminary Injunction Seeking Immediate Release from [United States Immigration and Customs Enforcement ("ICE")] Detention ("Motion for Prelim. Injunction"), (Doc. 13). Ms. Fiallos seeks Petitioner's immediate release based on due process violations and prolonged detention contradictory to the holdings of *Zadvydas v. Davis* and *Jennings v. Rodriguez*. (*Id.* at 1). She initially argues that Petitioner's detention is governed by Section 1226(a) and, thus, "indefinite or unreasoned" detention is not permissible pursuant to *Zadvydas* and *Jennings*. (*Id.* at 2).

On May 13, 2026, Ms. Fiallos also filed two untimely replies, (Docs. 1 and 15).[7] In the First Reply, (Doc. 14), Ms. Fiallos challenges Respondent's contention that she does not satisfy the "Next of Friend Standing requirements" set forth in *Whitmore v. Ark.*, 495 U.S. 149, 164 (1990). (Doc. 14 at 1). Ms. Fiallos asserts, without evidence or legal citations, that she is "Petitioner's sister and closest available advocate outside detention" to ensure Petitioner receives "due process," "to defend his liberty," and "prevent ongoing violations of law." (*Id.* at 2). She

---

[7] Fiallos titled (Doc. 14), "Supplemental Memorandum in Support of Next Friend Standing." She titled the first page of (Doc. 15) as, "Petition for Writ of Habeas Corpus." (Doc. 15 at 1). The second page is titled, "Petitioner's Reply to Respondents' Answer in Support of Habeas Corpus Relief." (*Id.* at 2). For brevity and clarity purposes, the Court refers to the untimely replies as "First Reply," (Doc. 14), and "Second Reply," (Doc. 15), respectively

further summarily claims that Petitioner's detainment "severely limits his ability to . . . communicate consistently, prepare legal filings, respond to complex legal arguments, [and] protect his own constitutional rights." (*Id.* at 3).

In the 176-page Second Reply, (Doc. 15), Ms. Fiallos contends—for the first time—that Petitioner is being detained in violation of the Fifth Amendment. (Doc. 15 at 2, 6). She maintains her "Next Friend" status for the same reasons articulated in the Supp. Memorandum. (*Id.* at 3). She next argues, for the first time, that Petitioner challenges his detention and not his removal and, for this reason, the Court should waive the administration exhaustion prerequisite. (*Id.* at 3-4). In support, she conclusory states that the Petitioner is suffering irreparable harm while he is detained pending an administrative final order. (*Id.* at 4). Next, Ms. Fiallos asserts that USCIS' revocation of Petitioner's DACA status is arbitrary and violates due process. (*Id.* at 4-5). With respect to Petitioner's July 2025 bond hearing, Ms. Fiallos claims *Zadvydas v. Davis* and *Jennings v. Rodriguez* hold that Petitioner should be released because his detention is not reasonable nor justified. (*Id.* at 5, 9). Finally, Ms. Fiallos contends Section 1226(e) does not bar habeas review because Petitioner raised Fifth Amendment due process claims. (*Id.* at 6-7). As a direct result, Petitioner should be entitled to a second bond hearing because he is not a danger to society or a flight risk. (*Id.* at 6).

On May 18, 2026, Respondent responded to the Motion for Prelim. Injunction. (Doc. 16). Respondent argues that a decision on the merits of the Petition is ripe for the Court and, hence, an abbreviated process through a preliminary injunction is improper. (*Id.* at 1-2).

## III.    LEGAL STANDARD

This Court has jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The Constitution guarantees

that "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A habeas petition under 28 U.S.C. § 2241 "challenges 'the fact or duration of a prisoner's confinement and seeks the remedy of immediate release or a shortened period of confinement.'" *Leatherwood v. Allbaugh*, 861 F.3d 1034, 1041 (10th Cir. 2017) (quoting *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997)). "Habeas corpus is a civil proceeding and the burden is upon the petitioner to show by a preponderance of the evidence that [she] is entitled to relief." *Sa'Ra v. Raemisch*, 536 F. App'x 783, 788 (10th Cir. 2013) (quoting *Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964)). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88). Because Petitioner challenges the legality of his continued detention, his claim falls squarely within the scope of § 2241.

## IV.    DISCUSSION

### A.    The Court Recommends Striking Petitioner's Untimely Replies (Docs. 14 and 15) to the Extent Petitioner Attempts to Amend or Supplement the Petition

As a preliminary matter, to the extent Petitioner's First Reply and Second Reply are directed at Respondent's response, (Doc. 11), the Court recommends considering those documents. Otherwise, the Court recommends that any additional claims and new requests for relief in the First Reply and Second Reply, be stricken as an attempt to improperly amend or supplement the original Petition.

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings before trial.

7

*See also* 28 U.S.C. § 2242 (an application of writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); Rules 1(b) and 12 of the Rules Governing Section 2254 Proceedings for the United States District Courts (applying the rules to other habeas corpus petitions and applying the Federal Rules of Civil Procedure). Because more than 21 days has elapsed since the original petition was served and since Respondent filed a response to the Petition, Rule 15(a)(1), which governs when a party may amend a pleading as a matter of course, does not apply. Instead, Rule 15(a)(2) applies. Under Rule 15(a)(2), Petitioner may amend his petition "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Because Petitioner did not obtain the opposing party's written consent or leave of the Court, Rule 15(a)(2) does not apply. Nor does Petitioner or Ms. Fiallos cite to any other rule or authority that would empower him to file a second habeas petition at this stage of the proceedings and without consent of Respondent or this Court.

To the extent Petitioner is seeking to supplement his original Petition, I again recommend rejecting his attempt. Under Rule 15(d), "on motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Here, Petitioner did not move to supplement his original Petition, instead simply filing two untimely documents, one of which raises new claims under the Due Process Clause of the Fifth Amendment. Further, the First Reply and the Second Reply do not appear to set out any transaction, occurrence, or event that happened after the date of the original Petition. The Court, therefore, recommends not considering Petitioner's additional and new claims, including the Due Process Clause of the Fifth Amendment set forth in the Second Reply, because they are filed in violation of Rule 15.

**B.      The Court Lacks Jurisdiction because the Petition Does Not Sufficiently**

8

**Establish Next Friend Standing**

Before proceeding to the merits of the Petition, the Court must also determine whether Ms. Fiallos may proceed as the "Next Friend" of Petitioner. A petition for a writ of habeas corpus must be in writing and "signed and verified by the person for whose relief it is intended or by someone acting in [her] behalf," known as a "next friend." 28 U.S.C. § 2242; *Whitmore*, 495 U.S. at 163; *see also* Advisory Committee Note to Habeas Corpus Rule 2(c)(5) ("The Committee envisions that the courts would apply [the] . . . 'next friend' standing analysis [set forth in *Whitmore*] in deciding whether the signer was actually authorized to sign the motion on behalf of the movant."). "A 'next friend' does not [herself] become a party to the habeas corpus action in which [she] participates, but simply pursues the cause on behalf of the detained person, who remains the real party in interest." *Whitmore*, 495 U.S. at 163 (citations omitted). Next friend status, therefore, is an exception to 28 U.S.C. § 1654, which states: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654.

To act on a detainee's behalf, the putative next friend: (1) "must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action;" and (2) "must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate." *Whitmore*, 495 U.S. 149 at 163. The putative next friend might demonstrate her dedication to the "best interests" of the real party in interest by showing "some significant relationship" with that party. *Id.* at 164. The putative next friend must also clearly establish "the propriety of his [or her] status" in order to "justify the jurisdiction of the court." *Id.* (citations omitted). Standing to proceed as next friend on behalf of a prisoner "is by no means granted automatically to whomever seeks to pursue

9

an action on behalf of another." *Id.* at 16

"[A] next-friend may not file a petition for a writ of habeas corpus on behalf of a detainee if the detainee himself could file the petition." *Wilson v. Lane*, 870 F.2d 1250, 1253 (7th Cir. 1989) (citing *Weber v. Garza*, 570 F.2d 511, 513 (5th Cir. 1978)). The putative next friend "must clearly and specifically set forth facts sufficient to satisfy the[] Art[icle] III standing requirements" because "[a] federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore*, 495 U.S. at 155-56 (citation omitted). If the next friend fails to adequately demonstrate why the petitioner is unable sign and verify the petition, the Court is without jurisdiction to consider it. *Id.*; *see also Jiron v. Swift*, 671 Fed. App'x 705, 706 (10th Cir. 2016) (denying certificate of appealability and dismissing appeal of "next friend" who failed to satisfy the *Whitmore* factors for next friend standing); *see also Weber*, 570 F.2d at 514 (finding the court is without jurisdiction to consider the habeas petition if "the application for habeas corpus filed by a would be 'next friend' does not set forth an adequate reason or explanation of the necessity for resort to the 'next friend' device putative next friend must); *see also Whitmore*, 495 U.S. at 163.

Here, there is no dispute that the next friend, Ms. Fiallos, has a significant relationship to Petitioner and is dedicated to his best interests, as his sister. Rather, Respondent disputes whether the first prong of the *Whitmore* test is met: he argues there is no evidence demonstrating that Petitioner cannot appear on his own behalf and his "temporary unavailability" is insufficient to establish inaccessibility. (Doc. 11 at 7-8) (citing *J.B. ex rel. K.E. v. Charley*, No. 21-632 MV-SCY, 2021 WL 5768907, at *2 (D.N.M. Dec. 6, 2021) (denying a mother "next friend" standing because the court relied on the absence of a showing "a complete inability to access the courts"). The Petition states Petitioner "remains detained" despite "[h]is immigration attorney . . . [advising] the

10

Immigration Judge and the ICE attorney that [Petitioner's] DACA has been approved . . . ." (Doc. 1 at 4). Ms. Fiallos, however, contends a finding of "next friend" is warranted because Petitioner's "detention imposes substantial practical limitations on his ability to litigate this matter effectively on his own behalf" because he "lacks meaningful access to legal resources." (Doc. 14 at 2); *see also* (Doc. 15 at 3) (arguing Petitioner's detainment "inherently limits: access to legal resources, ability to prepare filings, communication with the Court. Detention itself constitutes a sufficient practical barrier.").

The foregoing statements raise some concerns with this Court. On one hand, the Petition intimates Petitioner has an "immigration attorney." On the other hand, Petitioner's replies assert he is "inherently limit[ed]" to file on his own behalf because of a "lack of access" to legal resources and the Court. Yet, on May 17, 2026, Petitioner filed a typed and signed letter with the Court. *See* (Doc. 17). It is thus not clear why Petitioner must resort to a next friend when it appears he either has access to an attorney and/or he can prepare a document and file with the Court on his own behalf. For these reasons, The Court finds the Petition does not "clearly and specifically set forth facts" to establish next friend standing. The Court thus recommends dismissal without prejudice for failure to establish standing to file on behalf of Petitioner.[8]

C.       **USCIS Lawfully Exercised Its Discretionary Authority to Revoke Petitioner's DACA Status Pursuant to Section 236.23(a)(2)**

Petitioner initially contends that he is entitled to immediate release because he is an Approved DACA recipient and, pursuant to Section 1226(a), his continued detention is not appropriate. (Doc. 1 at 3); (Doc. 15 at 4-6); *see also* (Doc. 13 at 2). Petitioner did not explicitly

---

[8] Because the Court has determined that Ms. Fiallos lacks standing to bring the Petition the Court need not address Petitioner's additional arguments. The Court, however, will address Petitioner's remaining arguments to ensure a thorough review of the Petition.

raise any constitutional arguments in the Petition. *See* (Doc. 1). In the Second Reply, however, Petitioner argues for the first time that his DACA status is relevant because it "undermine[s] [the] justification for detention" and violates his due process rights. (Doc. 15 at 4-5). Respondent counters that an individual's DACA status does not automatically confer a right "to remain in or reenter the United States." (Doc. 11 at 9). Moreover, the plain language of Section 236.23(a)(2) provides that an individual's DACA status may be revoked, without notice, if the individual is detained by ICE prior to the USCIS' decision. (*Id.*)

For the reasons previously addressed, the Court finds Petitioner's untimely constitutional arguments are improper and recommends striking them. See Section IV. A. The Court, however, finds that Petitioner raised a timely claim as to whether USCIS' revocation of his deferred action was legally sufficient.

On June 15, 2012, the Secretary of DHS announced the DACA policy, authorizing deferred action on a case-by-case based for certain individuals who were brought to the United States as children, met specific educational and public-safety criteria, and passed background checks. Mem. From Janet Napolitano, Sec'y of DHS, <u>Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children</u> (June 15, 2012). Pursuant to DACA, ICE "exercise[s] prosecutorial discretion [] on an individual basis . . . by deferring action for a period of two years, subject to renewal." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 10 (2020). Those who meet DACA's criteria are thus granted 'affirmative . . . relief' from removal." *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 863 (6th Cir. 2022) (citing *Regents*, 591 U.S. at 10).

Moreover, DACA recipients, like Petitioner, are treated as lawfully present for the period of deferred action. 8 C.F.R. § 236.23(d) (2024); 87 Fed. Reg. at 53, 177-80; *see also Texas v. United*

*States*, 809 F.3d 134, 166 (5th Cir. 2015), aff'd by an equally divided Court, 579 U.S. 547 (2016) ("Deferred action . . . is much more than nonenforcement: It . . . affirmatively confer[s] 'lawful presence' and associated benefits . . . .").

In 2022, DHS promulgated a final rule codifying DACA's structure, adjudicative standards, collateral consequences, and termination procedure. Deferred Action for Childhood Arrivals, 87 Fed. Reg. 53, 152 (Aug. 30, 2022) (codified at 8 C.F.R. §§ 236.21-236.23). The rule defined deferred action as "a form of enforcement discretion not to pursue removal of certain [noncitizens]," or a "temporary forbearance from removal." 8 C.F.R. § 236.21(c)(1).

The regulations also lay out specific procedures by which an alien's DACA protections may be terminated. 8 C.F.R. § 236.23(d). USCIS has exclusive jurisdiction to consider DACA applications, and it alone may terminate an alien's DACA protections. 8 C.F.R. § 236.23(a)(2), (d). With very few exceptions for national security and public safety offenses not applicable to Petitioner, USCIS may only terminate a non-detainee's grant of DACA protections after providing them with a Notice of Intent to Terminate and an opportunity to respond prior to termination. 8 C.F.R. § 236.23(d)(1). Relevant here, however, USCIS in its sole discretion "may not [] approve" an application or renewal for DACA if the alien applicant is in immigration detention at the time USCIS issues a decision on the DACA request or renewal. 8 C.F.R. § 236.23(a)(2).

In this matter, USCIS received Petitioner's Form I-821D Consideration of DACA renewal application on May 17, 2025. (Doc. 1 at 11). Petitioner has been detained since May 30, 2025. (*Id.* at 4). USCIS issued an Approval Notice of Deferred Action on July 19, 2025, that was valid to July 18, 2027. (*Id.* at 11). The Approval Notice of Deferred Action provides, in relevant part,

> Unless terminated, this decision to defer removal action will remain in effect for the duration of the validity period noted above. . . .
>
> NOTICE: USCIS and [DHS] reserve the right to verify the information submitted

13

in this request and/or supporting documentation to ensure conformity with applicable laws, rules, regulations, and other authorities. . . . Information obtained during the course of the verification will be used to determine whether termination of deferred action and/or removal proceedings are appropriate . . . ."

(*Id.*). On October 17, 2025, USCIS issued a Decision terminating Petitioner's DACA status without an opportunity to be heard. (Doc. 11-7). In the Decision, USCIS determined that, pursuant to Section 236.23(a)(2), it lacked authority to approve Petitioner's Form I-821D, Consideration of DACA because he was "in immigration detention as of the date of this adjudication [July 17, 2025]." (*Id.*) Further, based on "its unreviewable discretion," Petitioner had not demonstrated that he warranted "a favorable exercise of prosecutorial discretion" to "defer action" in Petitioner's case. (*Id.*)

Petitioner has not proffered, and the Court has not found any authority, supporting Petitioner's contention that USCIS' discretionary revocation of Petitioner's DACA status under the circumstances in this case warrants habeas relief. The undisputed facts in the record establish that USCIS revocation complied with Section 236.23(a)(2). Accordingly, the Court recommends denying the Petition as to Petitioner's claim that his DACA status prohibited detainment.[9]

**D.      Petitioner has Not Exhausted His Administrative Remedies Nor has He Demonstrated Exhaustion is Futile**

To begin, to the extent Respondents argue that a detainee is required to exhaust his administrative remedies before a court can order habeas relief, this Court is not persuaded. Petitioners are ordinarily required to exhaust their administrative remedies prior to seeking a writ

---

[9] The Court notes that in this District, the Courts have found petitioners have granted habeas petitions and/or motions for temporary restraining orders for DACA recipients who were detained while they had a valid Notice of Deferred Action. *See Hernandez-Cruz v. Anda-*Ybarra, No. 26-0486 JB/LF, 2026 LX 123127 (D.N.M. Mar. 31, 2026) (adopting Proposed Findings and Recommended Disposition in *Hernandez-Cruz v. Anda-Ybarra*, No. 2:26-cv-00486-JB-LF, 2026 LX 145006 (D.N.M. Mar. 23, 2026)); *see also Gamez Lira v. Noem*, No. 1:25-CV-00855-WJ-KK, 2025 U.S. Dist. LEXIS 173818, 2025 WL 2581710 (D.N.M. Sept. 5, 2025). Those cases are distinguishable, however, because the petitioners properly and timely raised procedural and substantive due process claims. Hence, the Court recommends denying the Petition without prejudice to allow Petitioner to reassess his constitutional claims.

under 28 U.S.C. § 2241, but exhaustion is not a statutory requirement. *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *see also Soberanes*, 388 F.3d at 1310–11 (Although appealing to the BIA normally is required to obtain subsequent judicial review, exhaustion deficiencies do not affect habeas jurisdiction over challenges to immigration detention.). As another court within the Tenth Circuit recently explained in the context of an immigration habeas matter, "exhaustion is typically nonjurisdictional, and courts treat a rule as jurisdictional only if Congress clearly states that it is." *Salvador F.-G. v. Noem*, No. 25-CV-0243-CVE-MTS, 2025 WL 1669356, at *6 (N.D. OK. June 12, 2025) (citation modified) (quoting *Santos-Zacaria v. Garland*, 598 U.S. 411, 416–17 (2023)). Further, the Tenth Circuit has not addressed whether the exhaustion requirement applies in the immigration context, and the INA only explicitly requires exhaustion of administrative remedies when challenging a final removal order. *See* 8 U.S.C. § 1252(d)1); *see also Gonzales v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (explaining that administrative exhaustion applies to challenges of final orders of removal but not to challenges to preliminary custody or bond determinations). "[W]here Congress [has] not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (requiring courts to weigh the institutional interests in exhaustion against the individual interests in prompt judicial review). "A narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile." *Garza*, 596 F.3d at 1203.

Petitioner brings this habeas Petition while appeal of his removal order is pending before the BIA. Notably, Petitioner does not raise any futility arguments in the Petition. In the Second Reply, for the first time, Petitioner argues exhaustion is futile but offers only conclusory statements that "prolonged detention is unconstitutional" and "detention [may not] continue by default." (Doc. 15 at 6). The Court concurs with Respondent that Petition has failed to exhaust his administrative

remedies and sufficiently establish that exhaustion is futile. The Court thus recommends denying the Petition on this ground.

    **E.    The Court Lacks Jurisdiction over Discretionary Bond Denial Decisions under § 1226 and Petitioner Has Not Properly Pled a Constitutional Challenge**

The INA establishes distinct detention regimes depending on whether a noncitizen is "seeking admission" to the United States. *See Jennings v. Rodriguez*, 583 U.S. 281, 288-89 (2018). Relevant here, Section 1226(a) authorizes the arrest and detention, "on a warrant issued by the Attorney General," of noncitizens "pending a decision on whether [they are] to be removed." Noncitizens detained under this second detention regime are "entitled to individualized bond hearings at the outset of detention." *Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1239 (D.N.M. 2025).

It is undisputed that Petitioner is being detained pursuant to Section 1226. *See* (Doc. 11 at 9); *see also* (Doc. 13 at 2). Petitioner also acknowledges that an IJ conducted a bond hearing on June 13, 2025, and denied bond because Petitioner did not meet his burden of proof that he is not a danger to society. (Doc. 15 at 5). He further concedes that he cannot seek habeas relief based on discretionary bond denial decisions. (*Id.*) Nevertheless, in the Second Reply, Petitioner argues he has timely raised a constitutional challenge to his bond hearing because he is subject to an "indefinite detention" pending his removal appeal. (*Id.* at 5-6). Construing the Second Reply liberally, Petitioner summarily argues that Respondent has not met his burden to establish Petitioner is a danger to society or flight risk. (*Id.* at 6).

Section 1226(e) states: "the Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." This language permits courts to review the constitutionality of "legislation authorizing [a petitioner's] detention without bail." *See Demore v. Kim*, 538 U.S. 510, 517 (2003) (The "clear text [of § 1226(e)] does not bar respondent's

16

constitutional challenge . . . ."); *see also Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (Observing that "§ 1226(e) does not preclude 'challenges [to] the statutory framework that permits [the alien's] detention without bail.'") (alternations in original); *Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). But this Court lacks jurisdiction under § 1226(e) to review discretionary judgments in bond hearings. *Jennings*, 583 U.S. at 295 ("As we have previously explained, § 1226(e) precludes an alien from 'challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release.'") (alteration in original); *Mwangi*, 465 F. App'x at 787 ("[T]o the extent [the petitioner] challenges the agency's discretionary bond decision, the magistrate judge was correct that the court lacked jurisdiction.").

As an initial matter, the Court reaffirms its prior recommendation to strike Petitioner's due process claims raised—for the first time—in the untimely Second Reply. *See* Section IV.A. Accordingly, the Court recommends denying the Petition on this ground.

Notwithstanding, the Court further finds Petitioner does not challenge the constitutionality of his bond hearing or the statutory framework. Petitioner attempts to frame his argument as an attack on the constitutionality of his "indefinite detention." *See* (Doc. 15 at 5-6). But the Court finds his argument is properly understood as a request to review whether the IJ properly weighed the government's evidence—or lack thereof. (*Id.* at 6) (asserting lack of new evidence warranting denial of a bond versus evidence in support of granting a bond). That is a challenge to the discretionary decision of the IJ, not a constitutional challenge. The Court also may not take on the role of advocate and craft arguments pertaining to the constitutionality of Petitioner's bond hearing or the statutory framework. *See United States v. Hernandez*, 627 F.3d 1331, 1335 (10th Cir. 2010); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Hence, the Court recommends

17

finding Petitioner's claim for relief based on detention without a second bond hearing is jurisdictionally barred pursuant to Section 1226(e).

### F.    Petitioner's Continued Detention Arguments Lack Merit[10]

Petitioner briefly, and without authority, alleges that under *Zadvydas v. Davis* and *Jennings v. Rodriguez* his continued detention is unconstitutional. (Doc. 15 at 5-6). As explained by Chief Judge Gonzales,

> Under the Immigration and Nationality Act ("INA"), when a noncitizen is ordered removed, the Government must execute the removal within a 90-day "removal period." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." § 1231(a)(2). As relevant here, the "removal period begins" when the removal order "becomes administratively final." § 1231(a)(1)(B)
>
> Although the Government may continue to detain an "inadmissible" noncitizen beyond the 90-day removal period, *see* § 1231(a)(6), it may not detain them "indefinitely." *Zadvydas*, 533 U.S. at 699. A six-month detention is "presumptively reasonable." *Id.* at 680. This period runs only while the noncitizen is actually "detained." *Callender v. Shanahan*, 281 F. Supp. 3d 428, 435 (S.D.N.Y. 2017); *see also Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1192 (N.D. Ala.) ("Zadvydas time" cannot run "while a petitioner is not in custody"); *Chun Yat Ma v. Asher*, 2012 WL 1432229, at *3 (W.D. Wash.) (same). After six months, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the Government to rebut that showing. *Zadvydas*, 533 U.S. at 680.

*Jiang v. Bondi*, No. CIV 25-0922 KG/GBW, 2025 WL 3281819, at *2 (D.N.M. Nov. 25, 2025).

Here, however, *Zadvydas* does not currently apply to Petitioner's detention because he does not have a final removal order. It is undisputed that Petitioner appealed his removal order to the BIA and that appeal is currently pending. *See, e.g.*, (Doc. 11-5). Because this appeal is pending, Petitioner's removal order has not become administratively final and the removal period under *Zadvydas* has not started to run. *See* 8 C.F.R. § 1241.1 ("An order of removal made by the

---

[10] The Court maintains its prior findings that Petitioner's constitutional challenges raised for the first time in the untimely Second Reply are improper and should be stricken. *See* Section IV. A.

immigration judge at the conclusion of proceedings under section 240 of the Act shall become final: (a) Upon dismissal of an appeal by the Board of Immigration Appeals.").

Petitioner also summarily argues that his prolonged detention violates *Jennings v. Rodriguez*." (Doc. 15 at 5-6). In *Jennings*, the Supreme Court rejected the argument that Section 1225(b)(1), 1225(b)(2), or 1226(c) only allow for detention during the pendency of the applicable proceeding (such as removal proceedings) for a maximum of six months before a bond hearing is required. 583 U.S. 281, 298-301 (2018). And further, the Court rejected the argument that Section 1226(a) requires periodic bond hearings every six months. *Id.* at 306. Accordingly, *Jennings* does not support Petitioner's argument that his continued detention is unlawful. This Court therefore recommends that Petitioner's request for relief under *Zadvydas* and *Jennings* be denied without prejudice.

## V.    RECOMMENDATION

For the reasons stated above, the Court respectfully recommends as follows:

1.    Petitioner Jean Carlos Alexi Fiallos Manzanares' Petition under 28 U.S.C. § 2241 for a Writ of Habeas Corpus, (Doc. 1), should be **DENIED** and **DISMISSED without prejudice**; and

2.    Petitioner Jean Carlos Alexi Fiallos Manzanares' Motion for a Preliminary Injunction, (Doc. 13), should be **DENIED as moot**.

19

**WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED. PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.**

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE